IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MATTHEW SKIPPER**, *et al.*, | * | |
|     **Plaintiffs**, | * | |
| **v.** | * | Civ. No. DLB-21-1022 |
| **CAREFIRST BLUECHOICE, INC.**, | * | |
|     **Defendant.** | * | |

**MEMORANDUM OPINION**

Matthew and Jamie Skipper filed this putative class action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), against CareFirst BlueChoice, Inc. ("CareFirst") alleging the insurance company improperly excluded coverage for embryo thawing. ECF 1. The plaintiffs assert claims for breach of contract and negligent misrepresentation and seek a declaratory judgment and damages. ECF 21.[1] CareFirst filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to a state claim. ECF 22. The plaintiffs opposed the motion, ECF 23, and CareFirst replied, ECF 24. A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2021). Because the Court lacks subject matter jurisdiction, CareFirst's motion to dismiss is granted, and the plaintiffs' second amended complaint is dismissed without prejudice.

**I.   Background**

In 2016, Matthew and Jamie Skipper obtained a health insurance policy from CareFirst. ECF 21, ¶ 15. The policy provides coverage for "Assisted reproductive technologies," which includes in-vitro fertilization ("IVF"), where less costly methods have failed. *Id.* ¶ 17. Before

---

[1] The plaintiffs filed an amended complaint, ECF 12, on July 16, 2021, and a second amended complaint, ECF 21, on November 15, 2021.

they were insured with CareFirst, the Skippers sought fertility treatment and attempted several cycles of intrauterine insemination without success. *Id.* ¶¶ 18–19. Jamie Skipper then underwent several egg retrieval and fresh transfer cycles, which were also unsuccessful, and the Skippers' physician advised that they should create and freeze embryos for transfer. *Id.* ¶¶ 20–24. In 2016, while insured by another carrier, the Skippers created and froze four embryos and transferred two of the frozen embryos, which resulted in a successful pregnancy. *Id.* ¶¶ 24–25.

In 2018, the Skippers secured prior authorization from CareFirst to proceed with an IVF transfer cycle with the remaining frozen embryos. *Id.* ¶ 26. CareFirst approved coverage for the IVF procedure but denied coverage for thawing the embryos, even though the embryos had to be thawed before the transfer. *Id.* ¶¶ 30–32; *see also* ECF 1-2 (CareFirst estimate of charges). The Skippers personally covered the $900 cost of thawing. ECF 21, ¶ 33. They appealed the denial and filed a complaint with the Maryland Insurance Administration ("MIA"). *Id.* ¶¶ 36–38. In May 2021, CareFirst sent a new explanation of benefits covering the embryo thawing and issued payment directly to the Skippers' physicians, and the MIA case was closed. *Id.* ¶¶ 40–43. The Skippers allege that CareFirst should have reimbursed them directly, rather than make payment to their physicians, and assert they lost the use of the funds for a period of years. *Id.* ¶¶ 44–46.

> The Skippers filed this lawsuit on behalf of a class defined as:
>
> All persons in the State of Maryland who, within three years prior to the date of the commencement of this action, did not receive coverage for embryo thawing but did receive it for other IVF-related expenses pursuant to a Care[F]irst health insurance policy issued in Maryland that purports to cover "pregnancy-related benefits."

*Id.* ¶ 47. They seek actual damages, attorney's fees and costs, and an award of pre- and post-judgment interest, as well as injunctive and declaratory relief "directing coverage of embryo thawing as part of coverage of other IVF-related expenses." *Id.* ¶ 16.

The plaintiffs allege that the Court has subject matter jurisdiction over this action under CAFA because at least one class member and CareFirst are citizens of different states, there are 100 or more potential class members, and the aggregate amount in controversy exceeds $5 million. *Id.* ¶ 5. CareFirst moves to dismiss for lack of subject matter jurisdiction because the plaintiffs have not sufficiently alleged the numerosity or amount in controversy thresholds required under CAFA. ECF 22.

## II.     Standard of Review

"Federal courts are courts of limited jurisdiction[,]" possessing "only that power authorized by Constitution and statute." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). The plaintiff bears the burden of establishing subject matter jurisdiction, and it is presumed that a federal court lacks jurisdiction over a case until the plaintiff demonstrates the contrary. *Kokkonen*, 511 U.S. at 377; *see also United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) ("A court is to presume . . . that a case lies *outside* its limited jurisdiction unless and until jurisdiction has been shown to be proper.").

"A motion to dismiss based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1) raises the question of whether the Court has the competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). When, as here, the defendant asserts a facial challenge to subject matter jurisdiction "by contending that, even assuming that the allegations are true, the complaint fails to set forth facts upon which jurisdiction is proper," the plaintiff "is afforded the same procedural protections as he would receive under a Rule 12(b)(6) consideration[.]" *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)) (internal quotation marks omitted); *see also*

3

*Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018) (applying the Rule 12(b)(6) standard on a facial challenge to jurisdiction). When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019)). On a Rule 12(b)(6) motion, the Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

While CAFA's "provisions should be read broadly," the plaintiff still must plausibly allege jurisdiction. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (holding that a removing defendant invoking jurisdiction under CAFA "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold"); *accord Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 194 (4th Cir. 2017).[2]

---

[2] In arguing that they have pled subject matter jurisdiction, the plaintiffs cite *Dominion Energy, Inc. v. City of Warren Police & Fire Retirement Sys.*, 928 F.3d 325, 336 (4th Cir. 2019), for the proposition that CAFA should be construed broadly. While true, the statement in *Dominion Energy* applied to CAFA's removal exceptions, which should be narrowly construed in favor of federal jurisdiction. *Dominion Energy* did not lower the standards for pleading jurisdiction in CAFA cases.

**III.    Analysis**

A federal district court has jurisdiction under CAFA if three requirements are satisfied: (1) the parties are minimally diverse in citizenship, i.e., "any member of a class of plaintiffs is a citizen of a State different from any defendant;" (2) the number of proposed class members is 100 or more; and (3) the aggregate amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d).  A conclusory invocation of CAFA is insufficient to establish subject matter jurisdiction without specific factual allegations that allow the court to draw reasonable inferences of the jurisdictional prerequisites.  *See Scott*, 865 F.3d at 195 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  CareFirst does not dispute there is minimal diversity; the plaintiffs are citizens of Maryland and CareFirst is a citizen of the District of Columbia.  The dispute lies in whether the plaintiffs have plausibly alleged numerosity and an amount in controversy over $5 million.

The plaintiffs argue the Court can plausibly infer from the following allegations that there are over 100 class members and the amount in controversy exceeds $5 million.  They allege that "Care[F]irst purports to provide health insurance to 3.4 million individuals and employers in Maryland, the District of Columbia, and Northern Virginia." ECF 21, ¶ 4.  "Nationwide, in 2018, 74.3% of more than 107,000 embryo transfer cycles involved frozen embryo transfers." *Id.* ¶ 10.  And "[m]ore than 6,000 embryo transfers were performed in Maryland in 2018." *Id.* ¶ 14.  The Skippers paid "$900 of their marital funds to cover the cost of thawing." *Id*. ¶ 33.  Finally, they concede that "the exact number of the members of the Class are unknown to [them] at this time," but they allege that "membership in the Class may be ascertained from the records maintained by [CareFirst]" and that they "are informed and believe that the Class includes hundreds of members." *Id.* ¶ 49.

The Court can reasonably infer from these allegations that there are more than 100 potential class members, but the same cannot be said for the amount in controversy. The amount in controversy is calculated by multiplying the number of potential class members by the average damages each class member sustained. As to the number of potential class members, the Court must be able to reasonably infer, at the very least, how many people in Maryland were insured by CareFirst during the relevant period. The allegations on this front fall short. While the plaintiffs allege that CareFirst insures 3.4 million individuals and employers in the District of Columbia, Maryland, and Virginia, the Court cannot reasonably infer how many of the individual insureds are Marylanders. Is the figure divided evenly into thirds or by population? Does CareFirst issue policies primarily to District of Columbia and Virginia residents or is Maryland its primary customer base? Answering these questions requires speculation. And the speculation does not end there. The Court must further speculate about how many of the CareFirst Maryland insureds were denied "coverage for embryo thawing" but received coverage for "other IVF-related expenses" pursuant to a policy that purports to cover "pregnancy-related benefits." ECF 21, ¶ 47 (defining the class). The statistics offered by the plaintiffs—that in 2018, 74.3% of more than 107,000 embryo transfer cycles nationwide involved frozen embryo transfers and more than 6,000 embryo transfers were performed in Maryland—are not enough. Assuming the nationwide percentage of 74.3% applies to the 6,000 embryo transfers in Maryland, it would be plausible to infer that 4,458 frozen embryo transfers were performed in Maryland in 2018. Further assuming those numbers remained consistent over the two subsequent class years, it also would be plausible to infer that approximately 13,374 frozen embryo transfers were performed in Maryland over the three-year class period (4,458 times 3 = 13,374). At $900 in damages per class member, the number of Maryland CareFirst insureds who meet the class definition would have to be at least

5,556 ($5,000,000 divided by $900 = 5,556).[3] That means that 42% of the frozen embryo transfers performed in Maryland during the class period would have to be CareFirst insureds subject to the same policy exclusion as the Skippers (5,556 divided by 13,374 = 0.42 or 42%).[4] Nothing in the second amended complaint allows the Court to plausibly infer that that threshold is met. The plaintiffs have not adequately alleged the amount in controversy. The Court, therefore, does not have subject matter jurisdiction.

Perhaps recognizing their pleading deficiencies, the plaintiffs argue the Court should consider that CareFirst has better access than they do to the information necessary to allege subject matter jurisdiction. For support, they cite *Scott*, 865 F.3d 189. But *Scott* does not stand for the proposition that the plaintiffs advance. In *Scott*, the defendant removed a state class action to

---

[3] The Skippers allege they paid $900 for the embryo thawing that occurred in the District of Columbia, but they do not allege that $900 is a reasonable out-of-pocket cost for embryo thawing throughout Maryland, which the Court assumes is the likely location for embryo thawing by most Maryland CareFirst insureds. Nonetheless, the Court assumes, without deciding, that the Skippers have adequately pled $900 is the average out-of-pocket expense for embryo thawing for other class members. Contrary to the Skippers' argument, prejudgment interest on the out-of-pocket costs is not counted when determining if the jurisdictional minimum is satisfied. *Parker v. Goldman Sachs Mortg. Co. Ltd. P'ship*, 596 F. Supp. 3d 559, 566 (D. Md. 2022) (citing 28 U.S.C. § 1332(d)(2)).

[4] The Court cannot, as the plaintiffs suggest, consider the number of potential class members as of the filing of their opposition on January 18, 2022. ECF 23 at 5 (arguing amount in controversy has been pled because the "class period currently encompasses more than four years" and the "typical annual number of frozen embryo transfers in Maryland. . . for the class period to date exceeds 25,000"). It is well settled that "the jurisdiction of the court depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824)); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289–90 (1938). This action was brought on April 27, 2021; an amended complaint was filed on July 16, 2021; and a second amended complaint was filed on November 15, 2021. To determine "the state of things" on the date of the filing of the action, *Grupo*, 541 U.S. at 570, the Court looks to the plaintiffs' jurisdictional allegations in the second amended complaint. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007) (looking to the amended complaint to determine jurisdiction). According to that pleading, the relevant class period is three years before the commencement of the action: April 27, 2018 through April 27, 2021. ECF 21, ¶ 47. The allegations as to that class period, and not later, determine whether there is subject matter jurisdiction.

7

federal court and invoked subject matter jurisdiction under CAFA. The plaintiffs challenged the defendant's allegations of subject matter jurisdiction in its removal notice, and the defendant then had the burden of proving the amount-in-controversy requirement by a preponderance of the evidence. *Id.* at 194. The Fourth Circuit held that the defendant, to meet its burden, had to "provide enough factual detail for the district court to discharge its constitutional duty and assess whether jurisdiction exists." *Id.* at 197. The Court stated that, "[i]n making such a determination, the district court 'may consider which party has better access to the relevant information.'" *Id.* (citing *Amoche v. Guar. Trust Life Ins. Co.*, 556 F.3d 41, 51 (1st Cir. 2009) (affirming grant of motion to remand state class action because the defendant, on removal, failed to demonstrate a reasonable probability that the amount in controversy exceeded $5 million)). *Scott*'s holding applies to removal cases when the defendant has the burden of proving subject matter jurisdiction.[5] In this case, CareFirst, unlike the defendant in *Scott*, did not remove the case from state court and invoke jurisdiction under CAFA. Rather, CareFirst has responded to a class action complaint filed in this Court by lodging a facial challenge to the sufficiency of the plaintiffs' subject matter jurisdiction allegations. It is not required to provide evidence to disprove the allegations, and the Court does not consider that it has better access to the information needed to plead subject matter jurisdiction. *See Kerns,* 585 F.3d at 192 (stating that when a defendant makes a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.").

---

[5] Similarly, in *Campbell v. Toyota Motor Credit Corp.*, cited by the plaintiffs for the proposition that CareFirst should have submitted evidence to refute their allegations, the defendant had removed the case to federal court under CAFA jurisdiction, and the plaintiff argued that removal was improper. No. PWG-18-150, 2018 WL 3439250, at *1 (D. Md. Jul 17, 2018). This Court denied the plaintiff's motion to remand because the defendant met its burden by providing sufficient evidence to demonstrate jurisdiction and the plaintiff offered only conclusory arguments to the contrary. *Id.* at *1, *5.

## IV.  Conclusion

The plaintiffs have failed to plausibly allege subject matter jurisdiction.  CareFirst's motion to dismiss, ECF 22, is granted, and the plaintiffs' claims are dismissed without prejudice.  A separate order follows.


Date: <u>March 8, 2023</u>

                                                             Deborah L. Boardman
                                                             United States District Judge